CHIEF JUSTICE WILLIAMS
delivered the opinion oe the court:
Appellant and Richard Loud, deceased, intermarried December 1, 1859, and in the following April she permanently abandoned him and his home, and so continued, when December 6, 1863, they, together with David Bell, as her trustee, entered into articles of separation, which he acknowledged for record January 20, 1864, and she and her trustee acknowledged for the same purpose two days thereafter. Richard Loud died in February, 1866, testate, without devising anything to her, though owning a lai'ge personal and real estate.
June 2, 1866, Mrs. Loud, by a written article of release, duly acknowledged and recorded, attempted to relinquish all her interest under the articles of separation, for the purpose of claiming a dower and distributable interest in her deceased husband’s estate.
The article of separation recites that she had voluntarily abandoned him “ without legal cause to authorize either dower or alimony,” and the parol testimony now in the cause justifies this recital. It was then stipulated that ho should pay her three hundred dollars, and furnish her the use of a certain brick house and the lot, &c., during her “ chosen isolation,” pay the taxes, and keep the premise^ in repair, and secure her free from intrusion or disturbance during her life. This involves two prominent inquiries — •
1. Is this a jointure within the meaning of our statute, which the wife may repudiate within one year from her husband’s death ?
2. Is it obligatory on her without reference to the statute ?
It is provided by section 7, chapter 47 (2 Stant. Rev. Stat.), that “ a conveyance or devise of real or personal state, by way of jointure, may bar the wife’s dower; *456 but if made before marriage, without her consent, of during infancy, or after marriage, she may, within twelve months after her husband’s death, waive the jointure by written relinquishment, acknowledged, &c., and have her dower.”
This statute was evidently intended to embrace all jointures made before marriage by the husband without the wife’s consent, and all, whether made before or after, and with or without the consent of a minor wife, and also all made subsequent to marriage with a wife living with her husband. The policy of the statute in all these cases harmonizes with the wisdom of our equity jurisprudence, and is confirmed by the observation of the most renowned of the English and American jurists; but it never intended to embrace cases where the parties had separated, and where cause of litigation and divorce existed, especially when the wife was at fault.
The compromise and settlement of causes of litigation between separated husband and wife is as much a subject of favor and solicitude on the part of legal policy as that of other parties; true, the ministers of law should be the more vigilant in scrutinizing such transactions, because of the peculiar relations of the parties, and the superior power and cunning and knowledge of the husband; but when, in good faith, such litigation is compromised through the agency of a trustee selected by herself and advisers, and who faithfully discharges his duties, there is no perceivable motive why the Legislature should virtually forbid this well-guarded and preserving power of the separated wife, which would be the case if she could not bind herself to abide the provisions of such articles, but should still have the right, within a year of the husband’s death, *457 to renounce and claim as his surviving widow. This would end all compromises between separated husband and wife, and drive them into the courts, however inclined they might be to adjust the matter themselves, and often draw upon the wife a long, vexatious, and to her a ruinous litigation, and which would not unfrequently be as harassing and detrimental to the husband.
Regarding the language, spirit, and presumed motive and policy of the statute, it is not deemed to embrace articles, contracts, and jointures, entered into between separated husband and wife to settle existing causes of litigation, and peaceably accomplish by private contract what could be obtained by a costly and vexatious litigation. Should the husband have a cause for a divorce, why may he not waive this and agree with his wife and her trustee to renounce her legal right to his estate in consideration of an agreed sum? Especially' as by suit he could entirely bar her, what public policy or morals would forbid this? Was it intended by that statute to drive the injured husband into the' legal forums to vindicate his legal rights as against his erring wife, or might a constructive policy, more in accord with the enlightened jurisprudence of the age, be imputed? As this case is not within the letter nor presumed intent of said statute, we turn to examine the legal powers and rights of the parties independent of it.
In Carson vs. Murray (3 Paige, 500), Chancellor Walworth, of New York, whilst expressing his doubts as to the public policy of upholding articles of separation between husband and wife, except made under the sanction of a court of justice, yet conceded that it had “ long since become the settled law of England that a valid agreement for an immediate separation between husband and *458 wife, and for a separate allowance for her support, maybe made through the medium of a trustee.” He further says, these decisions were anterior to the American Revolution., and, therefore, more potent authority than the subsequent decisions, and he should follow them in preference to the latter.
Nor does the case of Rogers vs. Rogers (4 Paige, 516), decided by the same learned chancellor, militate against this. In the latter case the wife had brought suit against the husband for separation, alimony, &c.; during its progress she, by the consent of her next friend, compromised the suit, agreed to a separation, he paying her four hundred dollars annually as a support during her life; and.it was agreed, verbally, to dismiss the suit; nor did her brother, then acting as her next friend, sign the compromise. The case was then a simple contract between husband and wife, and not obligatory at law, because they were incapable of,contracting with each other; beside, there being no written dismissal of the suit, it did not comply with the statute of New York, and was not obligatory; hence, upon her subsequent application in the suit for an allowance to support her and her suit during the litigation, the court properly refused to dismiss the suit because of such agreement, and overruled his objections to an allowance.
Day vs. West (2 Edwards' Ch'y, 592) was a suit between vendor and vendee, to recover purchase price, which was resisted because there was an outstanding dower encumbrance, which the vendor insisted did not exist, because the husband — his vendor — and his wife had entered into articles of separation, by which he had agreed to pay her two hundred dollars annually for a support during her life, to be paid quarterly, in consideration of which she surrendered all claim to support from him, and dower in *459 •his estate; and, subsequently, having filed a bill for a divorce a mesne et thoro, a decree was rendered, in which she accepted the gross sum of one thousand one hundred dollars “ in lieu of alimony and of all claims for her separate support and maintenance forever.”
The vice chancellor said the articles of separation could only operate in equity, not at law, to deprive or bar her dower; and in equity, as the husband had violated the articles by not paying the annuity, and had driven her to a suit, he could not set them up, and the decree only allowed a sum in gross in place of alimony and not of dower.
Townsend vs. Townsend (2 Sandf., 713) was an attempt by husband and wife, whilst living together, through the instrumentality of a trustee, to separate their property, without intending to separate, or having cause for separating, themselves; this was so manifestly in contravention of both law and public policy as to meet with the condemnation of the court.
In Grepsey vs. McKinney (30 Bar. N. Y., 49), the husband and’ wife, without any trustee on her part, entered into articles of separation. Such has been universally condemned by all courts, so far as we know.
In Parham vs. Parham et al. (6 Hump. Tenn., 296), was upon the claims of the surviving wife for dower, which was attempted to be resisted, because of articles of separation, in which, for the consideration paid by the husband, she released all claim for support and maintenance and alimony during her coverture, but which it was alleged and proved, as the court said, was intended to include a relinquishment of dower and distribution, and was left out by the mistake of the draftsman; the court then, without citing a single authority, or referring to a decision, determined that the article of separation was *460 void on account of the wife’s coverture, notwithstanding she had a trustee; perhaps the reason that no concurring authority was referred to as sustaining that view of the case, none was to be found.
In Simpson vs. Simpson (4 Dana, 140) this court, in accordance with all previous authority, condemned a mere contract between husband and wife for separation and conveyance of property to her; but it then recognized the validity of articles of separation made through the instrumentality of a trustee for her.
And in Gains’ adm’x vs. Poor (3 Met., 507), this court held, that a contract by a husband, whilst living in amity "with his wife,to pay a given sum as her support in anticipation of future separation, would be against public policy, but not so when made on account of previous separation, or in contemplation of immediate separation.
In Wallace vs. Bassett (41 Barb. N. Y., 93), it was held, that the husband who had entered into articles of separation with his wife and her trustee, by which he had conveyed to her the property he got by her and all her future acquisitions and property, was bound thereby, and he could assert no interest in her property after she died, though she left no issue, and although he came technically within the New York statute, giving to the surviving wife or husband one third of the real estate of such deceased wife or husband when there were no minor children.
In Thomas vs. Brown (10 Ohio S. R., 247), the Supreme Court of Ohio held, that when a contract of separation had been entered into, by which the husband agreed to convey to the wife a certain portion of his tract of land in fee simple, she to release him from maintenance and from dower, and maintain the three youngest children; *461 he assigned her the land; she lived on it and maintained the children, and claimed no dower up to his death, the court regarding it an executed contract upon her part,. and partially so on his, only no conveyance had been made, compelled the heirs-at-law to convey in fee simple to her, though there was no writing. And in Miller's ex'r vs. Miller (16 Ohio S. R., 531), the same court held the wife bound on a parol post-nuptial agreement of separation, fully executed by the husband. In Dellinger's Appeal (35 Penn.. 361), the Supreme Court of Pennsylvania held, that articles of separation entered into by husband and wife with her trustee, “ did not destroy the relation of husband and wife for all purposes; * * but the articles amount to a total surrender of all rights of property in the husband’s estate.” If the husband could be bound, but the wife not, under no circumstances, there wmuld be no mutuality, and, therefore, no consideration to uphold it as to him, and to hold him would be to violate an essential principle of all contracts.
Whilst courts should guard with vigilance the rights of wives, it is not meant to disregard those of the husband; a,nd when a wife, without legal cause, shall abandon her husband, and when causes of litigation between them exist, we apprehend that an article of separation entered into with a trustee consenting for the wife, in which the husband provides for her as well, or perhaps better, than the court would compel him, in consideration of which she relinquishes right of dower and distribution in his estate, and the parties continue to act upon this until the husband dies, it is too late for her to complain or seek to repudiate the provision made for her, and demand dower and distribution.
Wherefore, the judgment is affirmed.