**Harris v. Harris**

*Alfred F. Shea,* for plaintiff.

BECKERT, J., September 10, 1970.—Johnie Ruth McKenzie Harris (plaintiff-wife) commenced an action in divorce against Eddie Harris (defendant-husband). At the time the divorce action was instituted, plaintiff-wife resided in this county and defendant-husband in Philadelphia County. Deputized personal service was made on defendant through the sheriff's office of Philadelphia County. Thereafter, defendant-husband moved to the State of Georgia and remained a resident in that State to the present date.

No further proceedings have been instituted by plaintiff in an effort to obtain a decree in divorce. However, on March 6, 1970, plaintiff-wife filed with this court a "Petition to Determine Future Care, Custody and Visitation Rights of Children." The purported authority for such a petition is found in The Divorce Law of December 30, 1959, P. L. 2055, sec. 1, 23 PS §15. An order seeking a rule to show cause why the court should not issue an appropriate decree determining the question of custody and the fixing of a hearing date was attached to the petition. This order was signed by the duly constituted motion judge on March 6, 1970, making the rule returnable April 6, 1970, and setting a hearing for April 27, 1970. This was, in turn, served on defendant-husband in the State of Georgia by certified mail on March 28, 1970.

It appears that plaintiff did not follow the proper procedure in this regard. It is evident that plaintiff-wife should have filed an amended or supplemental complaint: Sabold v. Sabold, 48 D. & C. 2d 46 (1969); Pa. R. C. P. 1127. Nevertheless, in view of our allowing the rule, we will treat the petition as being in the nature of a supplemental·complaint, noting that, at

the time of filing, plaintiff-wife had physical custody of the two minor children and the children resided with her, within our jurisdiction, namely, at 11 Black Walnut Road, Levittown, Bucks County, Pa.

Within a space of five to six days after defendant-husband was notified, he, on or about April 3, 1970, went to the school the children attended and spirited them away, presumably to the State of Georgia. This action by defendant-husband was, of course, without the knowledge or consent of plaintiff-wife.

Although demand has been made on defendant by plaintiff for their return, the children have not been returned to this Commonwealth. The above represents the factual aspect of the record as of the date set for the hearing. On that date, the attorney for plaintiff-wife, together with his client, were present in the courtroom at the appointed time. Plaintiff's attorney outlined the above-recited factual background and requested the court to take testimony on the subject of care, custody, visitation rights and support and to enter an order on this subject. We declined to do so. There was afforded to counsel the right to make argument on two questions that occurred to the court, but counsel was not prepared to argue at that date and so was invited to place the matter on the argument list. This invitation was accepted and the two questions argued. The questions raised in the court's mind were (1) did the court have jurisdiction, as neither the children nor their custodian were physically within the territorial limits of the county, or even within the Commonwealth of Pennsylvania; and (2) assuming jurisdiction did exist, should testimony in this type of proceeding be taken by the court or a master?

The answer to the second question is readily found by a reading of section 3 of the Act of December 30,

1959, P. L. 2055, 23 PS §36, which, in pertinent part, states:

"A master may be appointed by the court to hear testimony on all or some issues, except issues of custody, paternity and support . . ."

This language was relied upon by Judge Wieand in De Carlo v. De Carlo, 32 Lehigh 267 (1966), where, at page 269, he stated: "The responsibility for hearing such testimony (on the question of the custody of children) may not be delegated to a master." It is further noted that the aforementioned section 3 of the Act of December 30, 1959, was implemented by the promulgation of Pennsylvania Rule of Civil Procedure 1133(a).

The remaining question does, however, give us some concern. We have been unable, and counsel has been unable, to find any Pennsylvania cases directly on point. The only reported case that we could find which deals with the Act of December 30, 1959, supra, is Leddy v. Leddy, 15 Cumberland 111 (1963). In that case, the court held they had no jurisdiction, but it should be noted that the facts present in Leddy differed from the instant case, for in Leddy, neither defendant-wife nor the children were residents nor domiciled in the Commonwealth of Pennsylvania at any time during the divorce proceedings. Therefore, it follows that the children were not in the custody of plaintiff at the time of filing the petition for custody.

At first blush, it would appear that the rather recent cases of Commonwealth ex rel. Hickey v. Hickey, 216 Pa. Superior Ct. 332 (1970), and Commonwealth ex rel. Rosequist v. Rosequist, 216 Pa. Superior Ct. 388 (1970), are dispositive of this problem. However, on closer analysis, the above two cases can be distinguished from the problem presently facing us.

From our reading of Hickey and Rosequist, and particularly the former case, the result therein mandated is that a court having obtained jurisdiction over the children, by virtue of the physical presence of the child or his legal custodian within its territorial limits, may, even after an order has been entered, be stripped of jurisdiction by the custodial parent and the child moving to another jurisdiction and having petitioned that court in the "second jurisdiction" to modify the order originally entered.

This, as can be seen, is not the factual situation that we are presently met with. Under our factual situation, there has been no order entered by any other court purportedly possessing jurisdiction over the children or the children's custodian.

The problem then, to our way of thinking, melts down to whether this or any court can be divested of jurisdiction by virtue of "self help" on the part of the father removing the children from the county after he has received notice of the hearing and when the children and the mother resided in the county when the petition for custody was filed.

It can be argued that if we entertain jurisdiction and proceed with a hearing, we are performing a vain and useless act as we have no legal machinery by which we can enforce the decree. This possibly is true, for the full faith and credit clause of the United States Constitution is not applicable where there has been a change of jurisdiction *and a change of circumstances* in temporary orders of custody: Commonwealth ex rel. Graham v. Graham, 367 Pa. 553 (1951); Irizarry Appeal, 195 Pa. Superior Ct. 104, cert. denied 368 U. S. 928 (1961). Nor does the full faith and credit clause apply where the jurisdiction of a sister State is not free of doubt: New York ex rel. Halvey v. Halvey, 330 U. S. 610. It is also true that the doctrine of res judicata has little standing or application in

custody cases: Commonwealth ex rel. Moss v. Moss, 159 Pa. Superior Ct. 133 (1946). Nevertheless, in this type of litigation, facts previously litigated in one jurisdiction should be accepted as established even though another court may reach a different end product than did the earlier court based upon the same facts: Commonwealth ex rel. v. Daven, 298 Pa. 416 (1930).

It follows, therefore, that plaintiff-wife, if she would choose to march through the courts of Georgia, assuming she was here successful in demonstrating that the best welfare of the children would be served by her having custody, would do so armed with a decree of this court and a record of the proceedings to introduce into evidence in Georgia for the purpose of establishing the litigated facts.

The immediate question that comes to mind is what effect would be given to this decree by a court of another State, particularly in view of its being an ex parte proceeding and the fact that the decree is attempting to operate extraterritorially over persons presently outside of our territorial limits. The answer to these questions is not for us to give, but reposes in a court other than ours. It would appear to us, however, that another court in viewing the present factual situation would not look kindly upon the actions of defendant-husband when considering the over-all question of the custody of the children and the interwoven question of whether their best welfare would be served by continuing to live with him as opposed to the natural mother. As to the nature of the ex parte proceeding, defendant-husband should not be permitted to complain of that fact when this is a condition he himself brought about.

We reach the conclusion, under the facts herein presented, that we continue to maintain jurisdiction of the question of custody of the children. To reach a

734

contrary result would put a premium upon "legalized kidnapping" by one parent of his child or children when that parent does not wish to be scrutinized by the court and examined by counsel. While this is a field and area of the law that is extremely flexible, it cannot be so flexible as to sanction the actions of defendant-husband. We, therefore, enter the following

## ORDER

And now, September 10, 1970, a hearing is hereby granted to wife-plaintiff to determine the custody of the minor children born of her marriage to defendant, Eddie Harris. The hearing is set for October 22, 1970, at 10 a.m., Courtroom 5, Bucks County Court House, Doylestown, Pa. Notice of the hearing shall be forwarded to the within named defendant by ordinary mail to his last known address at least 14 days prior to the date set for the hearing.