## In re Prouty

*William J. C. O'Donnell,* of *O'Donnell & O'Donnell,* for petitioners.

*Paul A. Prince,* of *Prince and Prince,* for respondent.

STEFAN, *J.,* March 11, 1977 — On May 17, 1974, this court granted temporary custody of Kim-

berley Prouty to the Child Welfare Services of the Montgomery County Institution District, pursuant to an agreement signed May 10, 1974, between that agency and David and Loretta Prouty, the parents and natural guardians of Kimberley Prouty. Mr. and Mrs. Prouty had been experiencing financial and marital difficulties, and felt that, at that time, they were not able to provide adequately for their daughter.

On November 20, 1974, per agreement of the parties and the stipulation of counsel, this court entered an order modifying the order of May 17, 1974, and granting "temporary custody" of Kimberley to Esther J. Prouty, the child's grandmother. The order directed further that the child's parents, David and Loretta Prouty, were to have liberal rights of visitation with Kimberley; that the Montgomery County Child Welfare Services was to have continued supervision in the case; and that this court "shall retain jurisdiction in this matter and shall, upon motion of any of the parties, hold such hearings or make such further Orders as it shall deem appropriate." Subsequently, by order dated September 21, 1976, the agency was relieved of any further supervisory responsibility with respect to Kimberley Prouty; however, the rest of the order of November 20, 1974, remained in force.

On December 16, 1976, Mr. and Mrs. Prouty filed a petition for custody, requesting that permanent custody of their daughter, Kimberley, be returned to them. They state in the petition that their circumstances have now changed, that they are both gainfully employed, that their marital and financial difficulties are resolved, and that they are, and expect to continue to be able to furnish Kimberley with all the necessary requirements for her sup-

port, maintenance, education, and welfare. They allege further that Esther Prouty has moved her permanent residence from Pennsylvania to Massachusetts, and that they believe that she intends to remove Kimberley there permanently.

This petition was personally served on Esther Prouty on December 18, 1976, in Pottstown, Montgomery County, Pa. On January 5, 1977, preliminary objections to the petition were filed claiming that this court has no jurisdiction over the subject matter of the action, and that the petition fails to set forth a prima facie case of illegal detention. Argument on the preliminary objections was heard on January 7, 1977, and two weeks were allowed for filing of briefs.

This court does have jurisdiction to hear the petition for custody. Specifically, we find that the domicile of Kimberley Prouty is still Montgomery County, Pa., no matter where her residence may be at this time, and despite the fact that Esther Prouty may now be residing in another state.

We base this conclusion on two theories. The first concerns the status of respondent. Most of the cases involving custody of children involve a contest between the two parents, or occasionally between a parent and a third party, to determine whether the parent seeking custody is, in fact, fit to have custody, or to determine which parent is more fit. It is also an adjudication of the rights of the parents vis-a-vis the child or children. Thus the domicile of the children in this type of case is said to be that of the parent having custody: Com. ex rel. Mason v. Mason, 213 Pa. Superior Ct. 433, 249 A. 2d 922 (1968). If a parent having custody moves his domicile, the domicile of the children in his custody moves with him.

In the instant matter, Esther Prouty is not Kimberley's parent; she is also not a party to whom custody has been awarded on a claim for same as against the petitioners or any other parties. There was never a contest here to determine her fitness or the fitness of the natural parents. It was never intended by any of the proceedings that Esther Prouty's right to custody be adjudicated nor have the petitioners' rights to custody been adjudicated against them. Rather, Esther Prouty was made a temporary custodian only, pursuant to an amicable agreement between the parties and a voluntary, but temporary, surrender of the child because of special circumstances. Petitioners have clearly not abandoned their right to custody of their child. Under these circumstances, we find that Kimberley Prouty's domicile remained with her parents, petitioners, in Montgomery County.

The Johnson Adoption Case, 399 Pa. 624, 161 A. 2d 358 (1960), although not precisely analogous to the instant matter, does offer an interesting comparison. In that case, the Supreme Court held that where a ward of the court was placed in the temporary custody of a third party guardian in another county, the domicile of the child remained in the county of the court of which he was a ward. At the time this court appointed Esther Prouty temporary custodian, on November 20, 1974, Kimberley was a ward of this court, and that order was conceived with the intent that Kimberley remain subject to the disposition of this court and the supervision of its child care agency. The agency was relieved of its actual supervisory responsibility with respect to Kimberley last September. This fact does not alter the original intent or interests of this court in retaining jurisdiction pursuant to the order

of November 20, 1974, which, except as to the agency's role, is still in effect.

The second theory on which we base our finding that Kimberley Prouty's domicile is in Montgomery County concerns Esther Prouty's authority to remove Kimberley from this jurisdiction. There is a dearth of case law in this state on the subject of the power of a guardian other than a parent over domicile. The statutes of some states and the case law of others provide that a guardian may not fix a child's domicile outside of the appointing state without the express permission of the appointing court: See, Restatement, 2d, Conflict of Laws, §22. The authority of a guardian in this respect may be set forth expressly in the original order of appointment or in a subsequent related order. If it is not, however, as it is not in the instant case, then the intention of the court must be discerned from its language. Section 22(h) of the Restatement, 2d, Conflict of Laws, says that "an effort must be made to ascertain this authority by interpreting the court's various orders and decrees in the light of the circumstances attending their issuance." Another part of this section states the following: "h. Power of guardian over domicil. A person's domicil should usually be in the place to which he is most closely related. This policy, if it stood alone, would lead to the conclusion that a child under guardianship should be domiciled in the place where he has been sent by the guardian to live and make his home. But this policy must give way on occasion to another policy, which is that the child, who is the ward of the appointing court, should not acquire a domicil in a place where that court does not wish him to. Because of this latter policy, the child will be held not to have acquired a domicil in a place where the

guardian had no authority to send him in the first instance. And even when the guardian acted within his authority in sending the child to a certain place to live and make a home, the child will be held not to have acquired a domicil in that place if the guardian's authority did not extend to fixing the child's domicil there."

In interpreting the order of this court of November 20, 1974, particularly in light of the circumstances attending its issuance already discussed above, we believe that the intention clearly was that Kimberley Prouty remain in Montgomery County and be subject to the jurisdiction of the courts herein. We read in its language a clear intention that the temporary custodian, Esther Prouty, does not have the authority to remove the child from this jurisdiction and venue. These intentions are implied in paragraphs two and three of the order which provide that the parents shall have liberal rights of visitation with the child and that the Montgomery County Child Welfare Services is to have continued supervision of the case. In paragraph four, the intention is expressed: "This Court shall retain jurisdiction in this matter and shall, upon motion of any of the parties, hold such hearings or make such further Orders as it shall deem appropriate."

Accordingly, we find that Esther Prouty had no authority to remove Kimberley from this jurisdiction; and that Kimberley has not acquired a new domicile outside Pennsylvania.

Respondent's second objection, that no prima facie case has been set forth for illegal detention, is irrelevant here. Whether or not Kimberley Prouty is being "illegally detained" has nothing whatever to do with the right of the natural parents to petition

this court for return of permanent custody of their child.

At the time of initial hearing on January 7, 1977, it was stipulated that should the court determine the jurisdictional question against respondent, then respondent should have the opportunity to present evidence at a subsequent hearing. Accordingly, the following order will embrace instructions to the court administrator to relist the matter for the taking of additional testimony on behalf of respondent.

## ORDER

And now, March 11, 1977, after hearing and consideration of briefs, the preliminary objections of respondent, Esther Prouty, are dismissed. The court administrator is directed to list the matter for further hearing, in accordance with the foregoing memorandum, and to notify counsel for the parties of the continued hearing date.